Marian **ROACHE,** individually and as next friend for Kyrees Pettiford and Kaliff Pettiford, Plaintiffs Below, Appellant,

v.

Stanley **CHARNEY** as Administrator of the Estate of Constance Rogers, Defendant Below, Appellee.

No. 338, 2011.

Supreme Court of Delaware.

Submitted: Jan. 4, 2012.

Decided: Feb. 24, 2012.

Corrected: Feb. 28, 2012.

---

4. *Id.*

Edward J. Fornias, III, Roeberg, Moore & Friedman, P.A., Wilmington, Delaware, for appellant.

Dana Spring Monzo, White and Williams LLP, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, BERGER, Justice and NOBLE, Vice Chancellor.*

STEELE, Chief Justice:

Marian Roache allegedly suffered injuries when Constance Rogers rear ended her car in 2007. She filed a complaint on October 7, 2009. At a summary judgment hearing, the trial judge held that Roache's expert failed to state an opinion on causation and denied a request for a 24 hour continuance to clarify the expert's report. Roache appeals on two grounds: (1) the expert report was sufficient to survive the motion for summary judgment; and, (2) the trial judge abused his discretion by denying the continuance. Although Roache's expert failed to provide an opinion on causation, the trial judge abused his discretion by refusing to grant the 24 hour continuance. We therefore REVERSE.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 10, 2007, Marian Roache drove her two sons Kaliff and Kyrees as passengers in New Castle County when Constance Rogers' car collided with theirs. Roache alleges that she and her two sons sustained injuries to their respective necks and lower backs as a result of the accident.

After a few months of physical therapy, Roache's primary care physician referred her to orthopedic surgeon Dr. Bruce Katz. Dr. Katz first treated Roache on February 5, 2008 and recorded the following note: "The patient is a CNA who denies any history of pain, however on 10/10/07 she was involved in a motor vehicle accident.

She was a restrained driver who was rear ended twice by another driver who unfortunately was having a seizure."[1] According to Dr. Katz's office notes, Roache sought treatment for her back and leg pain four more times in 2008.

On January 6, 2009, Dr. Katz examined Roache for neck symptoms in addition to back and leg pain. Office records from this appointment indicate that "[Roache] was last seen on 12/9/09 for her low-back. She presents today to have her neck examined. Her history is identical. She was involved in a motor vehicle accident on 10/10/07."[2] In February 2009, Dr. Katz told Roache she was a surgical candidate for total disc replacement and discussed treatment options. Roache decided to have disc replacement surgery in April 2009.

Roache later filed a complaint against Stanley Charney on October 7, 2009. Constance Rogers had expired for reasons unrelated to the automobile collision, and Charney was appointed the administrator of Rogers' estate. The complaint alleges that Roache suffered serious and permanent personal injuries including but not limited to (1) cervical strain and sprain, (2) lumbar strain and sprain, (3) pain and suffering, and (4) herniated disc at L4–5.

The treating physician, Dr. Katz, authored an October 30, 2009 expert report about Roache's medical treatment. In the report, Dr. Katz first describes the accident as follows: "She indicated on 10/10/07 she was involved in a motor vehicle accident. She was a restrained driver who was rear ended twice by another driver. She did not hit her head or lose consciousness. She went to Christiana Hospital via

---

* Sitting by designation pursuant to Del. Const. Art. IV, § 12.

1. App. to Opening Br. A–15.

2. *Id.* at A–22.

ambulance afterwards." [3] The expert report documents Roache's complaints of back pain and leg pain in the right lateral thigh, right lateral calf. Dr. Katz noted no improvement in her symptoms, and examination demonstrated restriction in terms of forward flexion and extension.[4] Finally, Dr. Katz discussed Roache's neck injuries. The report states that "On 1/6/09 she presented to the office to have her neck evaluated, as related to the motor vehicle accident she sustained on 10/10/07." [5] At the appointment, Roache gave herself a 4/10 on a pain scale, and Dr. Katz recorded that physical examination of the upper extremity revealed limited extension and lateral bending.[6]

On January 15, 2010, Roache drafted a letter asking Dr. Katz to prepare an addendum to the narrative report he provided in October. The letter included all of Roache's medical records on file and specifically asked "whether these records affect your causation opinion." [7] In a report dated February 8, 2010, Dr. Katz responded, "I had the opportunity to review the records that you sent me regarding Ms. Roache. After review of the records, I have not changed my opinion with respect to the patient's lower back and leg issues." [8]

Dr. Errol Ger, expert for defendant Charney, also provided a report on April 25, 2011. This report was based on a physical examination of Roache and a review of her medical records. According to the Ger report, Roache was involved in a car accident about 23 years ago and saw Dr. Dressler in 2005 with chronic low back pain. In conclusion, Dr. Ger found that "the neck pain was directly attributable to the automobile accident. However, there were pre-existing low back complaints and it is not clear whether the surgery performed for her low back was necessitated by the automobile accident or due to the pre-existing low back problems." [9]

On June 13, 2011, Charney filed a Motion for Summary Judgment claiming that Dr. Katz's expert report failed to state an opinion on causation between Dr. Katz's treatment and Roache's automobile collision. The trial judge held a hearing on June 27, 2011. According to the transcript, the trial judge first found that Dr. Katz's reports did not address causation:

> [V]iewing it most favorably to the non-moving party, I still don't have anything other than I saw her following the motor vehicle accident and this is what I treated her for, or this is what I did in response to what I saw, but there's no mention of any causal reference.[10]

Roache requested a 24 hour continuance to clarify the meaning of Dr. Katz's report, but the trial judge found that a continuance would be problematic because Charney would have to "go back and look at her expert and see whether they need to get this matter, or have a further response or hire another expert" only 8 days before trial.[11] In a bench ruling, the trial judge held "[O]ne, I don't think there's any basis for a continuance, two, I do not think it's appropriate to allow any supplemental reports based upon the procedural posture of

3. *Id.* at A–51.

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.* at A–56.

8. *Id.* at A–57.

9. *Id.* at A–68–69.

10. Summ. J. Hr'g Tr. 9, June 27, 2011.

11. Hr'g Tr. 10.

the case."[12] Roache appeals the trial judge's order.

## II. DISCUSSION

### A. The expert report failed to provide an opinion on causation

■ In order to survive a motion for summary judgment, Roache must adequately establish all of the elements essential to her case that she would have the burden to prove at trial.[13] In Delaware, a negligence claim requires a plaintiff to "prove by a preponderance of the evidence that the defendant's actions breached a duty of care in a way that proximately caused the plaintiff's injury."[14] When the plaintiff's claim involves bodily injuries, "the causal connection between the defendant's alleged negligent conduct and the plaintiff's alleged injury must be proven by the direct testimony of a competent medical expert."[15]

■ Roache's expert Dr. Katz provided two expert reports. In the October 2009 report, Dr. Katz discussed Roache's accident and medical treatment following the accident but did not explicitly state that the injuries were caused by or related to the accident with Constance Rogers in 2007. The report also failed to discuss Roache's medical history before 2007, including back and neck injuries suffered from a previous car accident around 1989. When Roache requested an addendum expert report, specifically asking for a causa-

tion opinion, Dr. Katz responded with a letter stating "I have not changed my opinion with respect to the patient's lower back and leg issues."[16] The judge examined both expert reports and properly held that Roache's expert failed to provide an opinion on causation.

### B. The trial judge abused his discretion by refusing to grant the 24 hour continuance

■ This Court reviews a request for a continuance under the abuse of discretion standard. We held in the 1918 case *State v. Henry* that "[t]he matter of the continuance of a case is one for the sound judicial discretion of the trial court—a discretion which may not be exercised arbitrarily or unjustly."[17] Abuse of discretion review presents a high but not insurmountable standard as "the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his [or her] judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[18] In *Firestone Tire and Rubber Co. v. Adams*, we applied the abuse of discretion standard as follows:

> Judicial discretion is the exercise or judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice as to produce injustice, its legal discretion has not been abused.[19]

12. Hr'g Tr. 17.

13. *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).

14. *Russell v. K–Mart Corp.*, 761 A.2d 1, 5 (Del.2000).

15. *Rayfield v. Power*, 840 A.2d 642, 2003 WL 22873037, at *1 (Del. Dec. 2, 2003) (TABLE) (citing *Money v. Manville Corp.*, 596 A.2d 1372, 1376–77 (Del.1991)).

16. App. to Opening Br. at A–57.

17. *State v. Henry*, 105 A. 849, 851 (Del.1918).

18. *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968).

19. *Firestone Tire and Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del.1988) (citing *Chavin*, 243 A.2d at 695).

Conversely, when a trial judge exceeds the bounds of reason in light of the circumstances or has ignored recognized rules of law or practice to produce injustice, discretion has been abused.

 In *Secrest v. State*, we established guidelines for reviewing the grant or denial of a continuance. "First, the party seeking the continuance has the burden of establishing a clear record of the relevant facts relating to the criteria for a continuance, including the length of the requested continuance." [20] After providing the trial judge with the reasons for and the length of the continuance, the party seeking the continuance must also demonstrate:

(a) that it was diligent in preparing for the presentation of the testimony;

(b) that the continuance will be likely to satisfy the need to present the testimony;

(c) that the inconvenience to the Court, opposing parties, witnesses and jurors is insubstantial in relation to the likely prejudice which would result from the denial of the continuance. [21]

 Roache has satisfied *Secrest* by establishing a record of facts relating to the continuance and specifically including the length of the requested continuance. Furthermore, Roache can be distinguished from two cases where the party requesting the continuance failed to provide the required information.

In *Smith v. State*, the trial judge denied Corey Smith's request for a continuance to locate a subpoenaed witness who failed to appear. We applied the standards of *Secrest v. State* and affirmed the denial of the continuance because Smith did not disclose the length of his requested continuance and did not show that the denial of the continuance would cause prejudice to his case. [22] Unlike Smith, who did not indicate the length of time needed to obtain the presence of the witness, Roache asked for a specific 24 hour continuance.

In *Ungar v. Sarafite*, Sidney Ungar argued for a continuance on the ground that a few hours were needed to enable him to present medical proof and expert testimony showing no contempt was intended, but the trial judge denied the continuance. [23] The United States Supreme Court affirmed the denial because "Ungar asserted no reason why the testimony and medical proof ... was not obtained between Thursday and Tuesday and presented in court at the time of the scheduled hearing, *nor did he name the witnesses he would call nor did he give the substance of their testimony.*" [24] In the instant case, Roache provided the trial judge with all of the relevant facts related to the criteria for the continuance. Roache specifically named the expert witness and provided the substance of testimony when he asked for the continuance: "I think that all Dr. Katz would need to do to cure this defect is two sentences: this accident was, the surgery is related to the injury, here are the injuries that are related to the accident, the surgery's related to the accident." [25] Therefore, we hold that Roache provided the trial judge with sufficient facts relating to the purpose and length of the requested continuance.

20. *Secrest v. State*, 679 A.2d 58, 66 (Del.1996).

21. *Id.*

22. *Smith v. State*, 882 A.2d 762, 2005 WL 2149410, at *2 (Del. Aug. 17, 2005) (TABLE).

23. *Ungar v. Sarafite*, 376 U.S. 575, 590, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

24. *Id.* at 591, 84 S.Ct. 841 (emphasis added).

25. Hr'g Tr. 11–12.

Under *Secrest*, Roache must show that (a) she was diligent in the preparation of the expert opinion, (b) the continuance will likely satisfy the need to present the testimony, and (c) the inconvenience created by the continuance is insubstantial to the prejudice that would occur if the continuance were denied.

■■■ The record demonstrates that Roache's counsel was diligent in preparing the expert opinion for purposes of the *Secrest* test. Two days after Roache filed her complaint, counsel drafted a letter requesting the expert opinion. Dr. Katz finished the expert report on October 30, 2009 which was then relayed to opposing counsel on November 10, 2009. When defendant's attorney claimed that Roache had preexisting injuries, Roache's counsel provided Dr. Katz with more medical records and again requested an expert opinion specifically focused on causation.

Although we affirm that the second opinion failed to establish causation, the trial judge acknowledged that Roache could have held a good faith, albeit mistaken, belief that Dr. Katz provided a sufficient causation opinion. According to the hearing transcript, the trial judge admitted that Dr. Katz's causation finding "may be a reasonable inference from [Roache's] perspective, but I just don't see it." [26] Therefore, while counsel's failure to supplement the causation opinion in this case may indicate a lack of insight, there is no basis to suggest lack of diligence.

■■■ Based on the short length of the continuance and the two sentence opinion required to satisfy the causation requirement, the continuance is also likely to satisfy the need to present the testimony. Dr. Katz's expert testimony is necessary to satisfy the plaintiff's requirement to prove the causal connection between the negligent conduct and the injury with the direct testimony of a competent medical expert.[27] The two sentence clarification provided by Roache's counsel at the hearing would be sufficient to satisfy this requirement.[28]

■■■ The trial judge abused his discretion by failing to consider the prejudice that would befall Roache in relation to the minimal inconvenience to Charney and the court. *Secrest* requires the trial judge to examine both the inconvenience to the court, opposing parties, jurors, and witnesses as well as the prejudice that would result from a denial of the continuance.

The trial judge found that the continuance would inconvenience opposing counsel by requiring her to reconvene with her expert when trial was 8 days away. In opposing counsel's expert report, however, Dr. Ger already concluded that "the neck pain was directly attributable to the automobile accident." [29] The record reflects that opposing counsel was aware that Roache suffered injuries caused by the accident, and as a matter of law, no inconvenience can be created when the clarification is consistent with the opposing expert's opinion. The failure to consider this fact constitutes an abuse of discretion.

Dr. Ger also concluded that "there were pre-existing low back complaints and it is

26. Hr'g Tr. 9–10.

27. *Bell v. Sheryl Winsby Associates*, 2010 WL 2179880 at *3 (Del.Super. May 28, 2010) *af'd*, 7 A.3d 484 (Del.2010).

28. Hr'g Tr. 11–12 ("I think that all Dr. Katz would need to do to cure this defect is two

sentences: this accident was, the surgery is related to the injury, here are the injuries that are related to the accident, the surgery's related to the accident.").

29. App. to Opening Br. A–69.

 

not clear whether the surgery performed for her low back was necessitated by the automobile accident or due to the pre-existing low back problems." [30] According to the detailed expert report, Dr. Ger personally examined Roache and reviewed Roache's extensive medical records from 16 different sources. Yet Dr. Ger could not determine whether the back injury and surgery was or was not caused by the accident. Therefore, a two sentence clarification from Dr. Katz would neither cause Dr. Ger to change his inconclusive opinion nor cause significant inconvenience to Charney.[31]

On the other hand, Roache suffered clear prejudice as a result of the trial judge's decision to deny the continuance. In *Smith v. State*, Corey Smith requested a continuance to have witnesses testify that he did not own a gun and had never seen one before the day he was arrested. Because police found Smith in possession of a gun and Smith admitted to police that he owned the gun, we held that the witnesses' testimony would have minimal probative value, and therefore, Smith would not be prejudiced by the denied continuance.[32] Roache presents a wholly different case because Dr. Katz's causation opinion was essential for Roache to survive summary judgment. It was not simply evidence with minimal probative value. Without a continuance to obtain clarification on the expert testimony, Roache suffered prejudice in the form of a final judgment dismissing her claim. The record demonstrates that Roache satisfied *Secrest*, and the continuance should have been granted.

### III. CONCLUSION

For the forgoing reasons, the judgment of the Superior Court is reversed.

clarification, the fact that Dr. Ger was on vacation is irrelevant.

---

**30.** *Id.*

**31.** Because Dr. Ger's opinion would probably not change as a result of the two sentence

**32.** *Smith,* 2005 WL 2149410 at *2.